Good morning. Judge Bress and I are so pleased to be wrapping up this week with Judge Hickinson from the Fifth Circuit. Do I have to go back to the Fifth? You're welcome to stay with us anytime. Just for housekeeping purposes, counsel, let me call out the cases that were previously submitted on the briefs and record. That's the first three cases on the calendar. Enriquez-Escobar v. Blanche, Bonsnegra-Garcia v. Blanche, and Castro-Gallarga v. Blanche. So the first case up for argument is Margarita Rojas Ramirez v. Blanche. Good morning, your honors, and may it please the court. My name is Ellie Tiscus, and I am a certified law student here today on behalf of the petitioner, Ms. Margarita Rojas Ramirez. I would like to request three minutes of rebuttal on behalf of my colleague, Grace Caponetto. All right. Thank you. Ms. Rojas Ramirez, an indigenous Tarrasquean woman, suffered continuous and escalating violence in her home country of Mexico on account of her membership in her family, as well as her ethnicity. When she repeatedly made reports and sought help, the police were simply unable and unwilling to help her. Here, your honors, the case turns on two primary issues, nexus and the government's inability and unwillingness to protect Ms. Rojas Ramirez from harm. As it pertains to nexus, there are three distinct errors the BIA committed in terms of that nexus issue. There's a cognizability issue here too, as to the family, or would you say no? Your honor, we do not argue that there is a cognizability issue here. We do recognize that in the BIA order, there was discussion of a longer version of the family PSG that was presented by prior counsel before the BIA. However, we feel that the BIA did conclude on family generally, rather than that elongated PSG that the prior counsel said. But just quickly, not to consume too much time, because Ninth Circuit law is sort of intricate when it gets to the family as a cognizable social group. Does the family have to be distinctive in particular in society, or only to the persecutors? And is there a case that explains that? Your honor, I believe it as pertains to society in general. It's more of a general view on particularity. Right, that's sort of what I thought, but then how was this particular family distinctive in society, other than being a crime victim family massively persecuted by their neighbors? Your honor, we would point to Rios v. Lynch, which is... But that was a remand, right? All the court said was you didn't even look at the issue. The Ninth Circuit didn't really explain anything about how the family you're identifying here was distinctive across Mexican society. Your honor, in Rios v. Lynch, I understand the procedural posture of that case. However, there, this court held that family generally is the quintessential particular social group. I agree. Okay, but does that get you there? Your honor, we believe on family, yes. The fact that Ms. Rojas-Rumer has asserted that it was her group of her family members being persecuted here is cognizable. Okay, last question, though. Wouldn't that mean any family that's ever sort of pillaged criminally? So here, the theft from the house, and the son, understandably, self-help, goes to steal it back, and then he gets macheted, and they make threats to him. That really sounds like a very specific crime moment. Anytime there's a reprisal against a family based on crime, that qualifies, the PSG qualifies? Yes? Yes, your honor. We would argue, and further, I would just like to point that this... With a mixed motive situation, right? That's how these things generally occur? Exactly, your honor. That is where I was going to go next. Here, Judge Higginson, this is a mixed motive case where we do not contend that, particularly where the persecutors here were members of the Los Polones wing of the Sinaloa cartel. We do not argue that the Sinaloa cartel members likely had, at least in part, a financial or criminal motive behind their actions. However, here, Ms. Rojas-Rumer's family was also targeted because of their membership in that family as well. But the cases Rios, Garcia, there are only a few, Posada, all of them involve what the courts have said was sweeping, over time, targeting of a family. Even after they've committed the crime, they go after them at the funeral. In other words, it really becomes evident that they're going after the family. Here, it's a discreet, arguably, it's a very discreet moment of criminal activity. Then the son is able to relocate. If they were going after the family, why wouldn't they go after the son who's still in Mexico? Your honor, I would respectfully disagree on that point here. While it is a more condensed timeline, as to other cases in this court's jurisprudence, within, I believe, the 2010 to 2013 time span that Ms. Rojas-Rumer has testified to, we have not only a continuous span of threats and harm to the Rojas-Rumer's family, but there's also an escalating pattern of violence here. Ms. Rojas-Rumer has testified to, it began with her home being burglarized, where they took several things from her home, and it escalated to explicit threats made to the son that the persecutors were going to, quote, threat, they were going to rape his mother and his sister. That's explicit to those members of the family. Then, as your honor mentioned, it did escalate further to those persecutors following the son back to the family home, where they did attack him with a machete, chopping off three of his fingers and hitting him on the back of the head with the machete. It was a continuous, as well as escalating, pattern of violence, which I believe, and we would argue, shows that this was not only criminal in motive, but also that they continue to come back to the Rojas-Rumer's family and select them as the victims because of their membership in that family. As it pertains to nexus, I would like to also point out an additional issue or error that the BIA made here. Under Baralha-Rumero, the Ninth Circuit has a unique precedent in Baralha-Rumero, where there are differing standards for asylum and withholding of removal, whereas for an asylum claim, a petitioner need prove that a protected ground was a central reason, for withholding, it is a lesser standard under Ninth Circuit precedent. A petitioner need only prove that a protected ground was a reason. Does this matter if the petitioner hasn't shown the unable or unwilling component of the showing? Your honor, here, this court must decide favorably on both nexus as well as unable or unwilling in our case. So, if this court finds that the unable or unwilling prong does not succeed, that would foreclose our claim. However, here, we contend there are two distinct issues that the BIA committed in its unable or unwilling analysis. First, we would argue under Castillo v. Barr, here, the BIA overlooked and mischaracterized key portions of the record, which under Castillo is pure legal error that this court may review de novo. And separately, we argue that the record compels a contrary conclusion to that of the BIA and that there is simply no evidence in the record to indicate that the police took any meaningful action or had any meaningful ability to protect Ms. Rojas-Ramirez. One thing the government says is that some of the assertions that she's making about, I went to the police, they did nothing, are somewhat vague and lack detail. And I think the BIA may have picked up on that point also. How do you address that? Your honor, I would point to contrary testimony in the record where Ms. Rojas-Ramirez does make more clear assertions of what action she took with the police. On page, excuse me, on page 147 of the record, Ms. Rojas-Ramirez testified that she reported the threats of rape to the police and that the police did nothing saying they don't help, the police doesn't help at all because you don't give them anything. They only help people that can give them money. Right, but that's not that specific either though, right? And I guess the question I'm asking is, would the record compel the contrary conclusion? Your honor, here I would argue yes. The BIA improperly fixates and concludes on their unwilling and unable prong on the basis that there was a single arrest of a cartel-related member in a neighboring community for unrelated violence. And that is the only evidence that they conclude on. And further, your honor, they do minimize and mischaracterize Ms. Rojas-Ramirez's testimony to her mere subjective belief. Where here, her credible testimony is evidence, not subjective belief in this case. The evidence in the record is overwhelming to show that the police took no action, even after repeated reports by Ms. Rojas-Ramirez. I would point this court to look at the fact that the police didn't even give her a receipt of her reports. And further on page 590 of the record, Ms. Rojas-Ramirez testifies that the people who beat up my son paid the police money for them to drop the charges. So here, even if there was minimal ability for Ms. Rojas-Ramirez to seek help from the police, meaning she could make reports, there is simply no evidence in the record that they took any meaningful action against her persecutors. Could I, quick question, one factual, one legal question. Factually, did she speak to the asylum officer and say negatively that she didn't feel persecuted because of family? Yes, that line of testimony comes from AR-777, Your Honor. We do not contest that that is what Ms. Rojas-Ramirez said. However, I would urge this court to look at the other evidence in the record where Ms. Rojas-Ramirez testifies contrary to that one statement. Furthermore, that single line of testimony from the record does not drive the legal conclusion in this case. Do you agree that the unwilling issue is a bit harder for the harm she encountered at the border because we don't know who the persecutors are? Therefore, it's a bit hard to say that there'd be no protection from them? Yes, Your Honor, I agree with that. And the last question, I'm not interrupting just because you have time and your colleague wants to get up, but the last question I had was, what is the strongest Ninth Circuit case that says the family was the reason, a reason, as opposed to to consider it further? Has the Ninth Circuit actually ever held that the family was a reason for the persecution? Ever? Or every time have they remanded to the BIA say, look at it a little more, it's quintessential, it could be? Your Honor, I can't cite to a case right now, but I'd be happy to provide one in supplemental briefing. I would say that family is, again, the quintessential particular social group here. And I would point this court as well. If this court is not convinced that the record compels a contrary conclusion, there is an alternate ground to reach on the nexus issue. And that is the purely legal Barajas-Romero issue, where this court failed to cite to Barajas-Romero and failed in their order to delineate between the a central reason. But that issue is kind of harmless error if the unable or unwilling is supported. Yes, Your Honor. However, I would argue that issue is not harmless error, as the government does contend here. Under INSV Ventura, it is proper course under the ordinary remand rule to remand to the BIA to apply the proper framework in the first instance. And here, they lacked a citation to Barajas-Romero. Right, but I mean, if there's no unable or unwilling, then it would kind of be a foregone conclusion, wouldn't it? Yes, Your Honor. However, there is also a purely legal error as it pertained to the unable and unwilling prong here. There's multiple instances where the BIA overlooked key portions of record and testimony in reaching their conclusion. And under Castillo, this court may properly review that de novo and remand under that purely legal error as well. To finally just say one more thing, Your Honors, I would like to point to just another piece of testimony that I believe the BIA overlooked and I believe is significant for this court to review here. The BIA, in their order, concludes that Ms. Rojas-Romero has just testified to incidents with the police and that they did nothing. However, there are at least six instances in the record where Ms. Rojas-Romero makes that assertion. That subjective belief conclusion on behalf of the BIA clearly minimizes and mischaracterizes Ms. Rojas-Romero's credible testimony here. Because the BIA erred legally as it pertained to nexus, as well as on its unwilling prong, we would ask that this court either reverse or vacate the BIA's order, remand to the BIA with appropriate instructions, and grant the petition for review. Thank you. All right, let's hear from the government. Good morning, Your Honors. Daniel Capoletti on behalf of the government. Thank you all again for letting me appear here remotely. This court should deny the petitioner's petition for review. Substantial evidence supports the agency's determination regarding the lack of a nexus established between the harm petitioner experienced and fears in Mexico and either the membership in a particular social group, which she identified as her family or her indigenous status. Counsel, as an initial matter, can you address the Rojas-Romero issue? Did the BIA apply the same nexus standard to the asylum and withholding? The BIA applied the most restrictive standard and finding that it did not apply, that there was no nexus at all, and therefore, regardless of whether it was a reason or a substantial reason, the lack of... I think that goes to your argument regarding harmlessness, but was there an error in how the BIA applied the standard? Then we can discuss the evidence and whether it may be harmless on this record. What is the government's position there? Government's position is that there was not an error in that. Well, because I don't know what the BIA meant when it said, having failed to meet the higher burden of proof for asylum, the respondent cannot meet the lower burden of establishing a clear probability of persecution. I'm looking at AR-6, that seems illogical, right? Should be easier to meet the lower burden. For the... I believe the BIA, the board there is discussing or could be confusing the higher standard for withholding, which is as far as the likelihood of future persecution, that standard is lower in asylum cases and higher in withholding cases. That is flipped when it comes to the a reason versus a central reason. So the government's view is that the BIA was not addressing nexus in that sentence? Your Honor, I believe the board was addressing nexus in that sentence. So if it was talking about nexus, then it got it wrong, right? Because the lower burden should be easier to meet than the higher burden. Yes, Your Honor, I do understand that. I think the board addressed nexus earlier than that paragraph. And then that paragraph is referring to the probability of future harm. This decision is very difficult, right? They seem to get wrong what they write, and then they sure don't write a lot that seems relevant. I don't see analysis of mixed motive. And that's really the ball game in the world of family SPSG. Over and over again, this court has had to remand back because BIA is not addressing the family. I guess my question to you is, if we're properly going to apply a mixed motive case law, this cartel targets the family. It makes sense they'll go after a machete, the son who takes the stuff back. But how is it a property crime to say you're going to rape the sister and the mother? That had nothing to do with the crime. That's just going after the family. At least that's one reason, a part that they seem to have developed beyond criminal motive to raping the women of the family. Yes, Your Honor, I understand that perspective. The government's position that those are intertwined in a way that just can't be separated. But you don't win on intertwined. You've got to be able to say the family is, quote, incidental. It's not even a part of the reason. So just saying the two is intertwined, I think you lose. That means there are two motives and BIA got it wrong. So how can you say that the animus towards the family was incidental when the criminal element seems to be a property crime, but then they want to rape the women? Isn't that just smack on the line of authority like the Garcia case? Family was crime victims, but you had to remand to see if it was also because it went beyond it. It crossed the line from reprisal to animus. No, Your Honor, I believe they're they're they're related in such a way that they're not separate reasons. Well, then distinguish Garcia, please. Yes, Your Honor. Well, if you have to read it, we can read it to go ahead on with your argument. Right. I think I struggle with the same issue that goes to Judge Higginson's questions, counsel, because when you say intertwined, that's a mixed motive case. Right. And correct me if I'm wrong. I thought the record in this case was that the crimes occurred and the threats against the the rape of the daughter and the mother really occurred only after the son went to try to retrieve the property. Did I get that right? That's that is correct. All right. So how is that not persecution on account of membership in a family, on account of their relationship and familial relationship with the son who attempted to get the property back? The record indicates that the cartel related families actual motivation for threatening the family members was to extort money or to get the property back that they had stolen. The record doesn't compel a finding that. Right. They're going after the mom and the daughter. Right. Because the son tried to get the property back. Correct. Why were they targeting the mother and the daughter, but for their relationship with the son who tried to get the property back? It's purely incidental. That has got to be argument. Where does the scorecard stand in the other circuits on this a reason test? Because the last time I checked, we were either the only circuit to be doing this or maybe one other circuit agreed with us. Do you have any sense of where that the law is on this? Your Honor, your sense is where mine is as well. I know the Ninth Circuit applies a reason standard and I'm not aware off the top of my head of another circuit that's applying that as well. Did the government ever seek cert on that issue or pursue that? That has been a longstanding disagreement. Correct, Your Honor. I am not aware of whether the government has pursued cert on that. Do you want to speak quickly? The threats were indirect through the son relating to the robbery. Do you want to speak quickly to the border incident where the threats are directly to Petitioner, allegedly based on her ethnicity? Yes, Your Honor. Again, in that case, near the border, the mentions of her ethnicity were, again, incidental to the question that she was undergoing and the individuals in that town were doing the exact same thing to other individuals as well. I thought the statements were that they said, you're dark-skinned, you're indigenous. If you come back, we're going to slit your throat. That sounds fairly targeted because of that status. Am I wrong? Often, I am wrong. You know this record better than I do, so correct me if that wasn't the alleged threat of future. My understanding of the record was that they pointed that out, that she was indigenous and were trying to determine where she was coming from and that they thought maybe she was coming from a Central American country based on the color of her skin. And that was the reason for that. So that's not incidental. That is a reason. But the harm that she underwent was unrelated to their comments that she was indigenous background. Thank you. You've got additional time, so you can use it or you can see the time back unless my colleagues have any additional questions. Judge Bress? Okay. Anything to add, counsel? Just wanted to address some of the points that were made in Petitioner's reply brief regarding the standard of review. And I know there was some time given to argue that that the substantial evidence standard shouldn't apply to much of the analysis here. And the government would argue that that's not the case and that the substantial evidence standard applies to both the factual determinations and also the board's determination of agency determination regarding eligibility for asylum and withholding of removal. And that those determinations are given great weight and that this record contains substantial evidence that she was not targeted on the her persecution. There was no reason, there was no protected reason that she was persecuted, either by family, indigenous status, political opinion as well. She even stated that she doesn't fear the political candidate that had lost that election and was kind of shattering her trust. Shattering generally at individuals. And, you know, responded that the police, as far as the unwillingness or unable to control the individuals that she fears, you know, she mentioned that the police, you know, made a document, even if she didn't receive or have any evidence of that, of reports such, just the fact that police did not apprehend anyone or she's not aware of any progress made on those reports, that does not establish that the government of Mexico is unable or unwilling to protect her from those individuals. And unless there are any further questions, for those reasons, the government submits that this court should deny the position. Thank you very much, counsel. Thank you. Good morning, your honors, and may it please the court. My name is Grace Caponetto, and I'm a certified law student. And I'd like to begin by addressing Judge Higginson's question regarding the strongest Ninth Circuit precedent, as it relates to our family-based social group claim. That would be Reyes-Corrado v. Garland. It's a 2023 decision. I apologize for not having the full cite, but we'd be happy to provide a supplemental briefing on it. It is in your brief? It is not in our brief, but it is the strongest case as it relates to family social group on the point that you were questioning my co-counsel. We'd be happy to provide- It's Reyes v. Garland? Reyes-Corrado v. Garland, 2023. It's a decision written by Judge Koh. In response to another one of your questions- No, no, just quickly on that. So that is the Ninth Circuit actually saying the family was? Yes, your honor. So it's an example other than it could be. Okay. Yes, your honor. Yes. I have not seen it. It was the only ground for persecution in that case. So I would point the court in that direction. Moreover, I'd like to respond to another one of your questions, Judge, regarding cognizability of the particular social groups. That issue is not right before this court, as my co-counsel explained, primarily because the BIA failed to address it. So it would be a tenory violation for this court to consider that issue. I still just struggle with the theory on the family because I think what we've said, like in Rodriguez-Zuniga, it has to be motivated intrinsically by the family. So why does the record compel the conclusion that that's what's going on here as opposed to general strife and violence in this country? Absolutely, your honor. So you pointed originally to record page 777 where Ms. Rojas-Ramirez was asked in her CFI if she'd ever been threatened by her particular social group of family, and she stated no. Again, we do not dispute that testimony. However, it is taken out of context in that same credible fear interview, which is the I-867A. She also stated, ever since I got back from the United States, they have been threatening me and my family. She also testified to multiple- That's true. I mean, the issue is just, is this because this is a difficult place to live, or is it because there's something about the family intrinsically that's motivating this? Because it seems like what happened factually was that cartel members from a rival family stole property and they sought to get it back, and that's what led to some of this. And so I kind of ask myself, does the record compel the conclusion that what's going on here is family, or is it just simply people trying to get other people's property? Yes, your honor. I understand that the persecution on her family began as a criminal motive. However, it persisted and turned into an escalating pattern of violence against her and her family's social group. Your honor, I see that my time is about to expire. May I finish answering your question? Thank you. I'd like to also point this court to the Duran-Rodriguez v. Barr case, where this court held it is uncontroversial that when threats are combined with the infliction of such violence and harm to a petitioner's family, they establish persecution. Moreover, in J.R. v. Barr, this court also noted that our law does not require applicants to wait until gang members carry out their deadly threats until they are eligible for asylum, and we ask that this court not ask Ms. Ros-Ramirez to do the same. Thank you. All right. Thank you very much to everyone who argued, both sides, for your argument this morning. The matter is submitted, and thank you for taking this case pro bono, too. I think the certified law student did an excellent job. And Mr. Schletchinger, Mr. DeWitt, which ones? I'm Michael Devitt, your honor. Thank you, Mr. Devitt. On behalf of the University of San Diego. Our pleasure, and thank you to you as well, Mr. Schletchinger. Thank you, your honor. Thank you, counsel.
judges: Higginson, NGUYEN, BRESS